[Cite as *State v. Washington*, 2024-Ohio-3333.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2020-CA-18 |
| | : | |
| v. | : | Trial Court Case No. 19-CR-374 |
| | : | |
| JE-TARRE A. WASHINGTON | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on August 30, 2024

. . . . . . . . . . .

P.J. CONBOY, II, Attorney for Appellant

MATTHEW C. JOSEPH, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} In this reopened appeal, Je-Tarre A. Washington claims that the trial court abused its discretion in dismissing the only African-American prospective juror during jury selection and in failing to amend the record to reflect that that prospective juror, Juror Number 22, was an African-American individual. For the following reasons, the trial

court's judgment will be affirmed.

## I. Procedural History

{¶ 2} In December 2020, Washington was convicted after a jury trial of two counts of having weapons while under disability and one count each of aggravated burglary, aggravated robbery, felonious assault, abduction, burglary, receiving stolen property, failure to comply with an order or signal of a police officer, and possession of cocaine, as well as several gun specifications. The court imposed an aggregate sentence of a minimum of 24 years and a maximum of 28 years in prison, suspended Washington's driver's license for 25 years, and ordered him to pay court costs totaling $11,520. The court found Washington to be a repeat violent offender, but it did not impose an additional penalty.

{¶ 3} Washington's convictions stemmed from a series of incidents on June 24-25, 2019, and we detailed the factual circumstances underlying the charges and the procedural history of his prosecution in *State v. Washington*, 2022-Ohio-1426, ¶ 2-28 (2d Dist.). Washington appealed from his convictions, raising nine assignments of error. On April 29, 2022, we overruled the assignments of error and affirmed his convictions. *Id.*

{¶ 4} In July 2022, Washington, with new counsel (his trial counsel), asked us to reopen his direct appeal, alleging four instances of ineffective assistance of appellate counsel. We permitted reopening to allow him to raise that the trial court had abused its discretion in dismissing the sole African-American individual in the jury pool for cause. We also granted Washington's request for the record to be amended to include a

transcript of voir dire, which had not been previously transcribed. We overruled his additional three bases for reopening.

{¶ 5} A written transcript of the voir dire was made part of the record for this appeal on October 31, 2022. However, the transcript failed to include the sidebar discussions. In November 2022, Washington asked us for leave to amend the record with a transcript of the side bar proceedings. After a substantial delay due to Washington's appeal to the Ohio Supreme Court of our decision on his application for reopening, we granted the motion, and an amended voir dire transcript was filed on December 7, 2023.

{¶ 6} On February 15, 2024, pursuant to App.R. 9(C), Washington filed an additional request to supplement the record. He pointed to an "inaudible" portion of the amended voir dire transcript during which the jury was being selected. The disputed portion read:

> JUDGE: (Inaudible) cannot remain (inaudible) potentially expungable jury pool. That eliminates 12; 15.
>
> [DEFENSE COUNSEL]: You're saying that eliminates 15?
>
> *JUDGE: Uh-huh. And number 22 (inaudible) potentially it's a cause issue. I think she'd be eliminated either way.*
>
> **ALL COUNSEL VOICE NO OBJECTION**

(Italics added; bold in original.) Amended Voir Dire Tr. 55. According to Washington's counsel, after the trial court ruled that Juror Number 22 would be eliminated, co-defense counsel had argued against it based on Juror Number 22's being the only African-American in the jury pool. Counsel further stated that the trial court then replied

"potentially it's a cause issue. I think she'd be eliminated either way."

{¶ 7} We declined to supplement the record with Washington's statement of the proceedings for several reasons. First, we found that his request did not properly fall under App.R. 9(C). Second, we noted that Washington had not substantiated that the trial court had reviewed his statement of the proceedings and ruled on it. Third, we found that even if we were to consider Washington's statement of the proceedings alone, Washington's representation that Juror Number 22 was an African-American prospective juror was contradicted by co-defense counsel's statements before jury selection began: co-defense counsel had challenged the jury pool on the ground that "there were no people of minority in the jury pool." We remanded the matter to the trial court and instructed Washington to file a motion to correct/supplement the record there, pursuant to App.R. 9(E). *See* Order Overruling Motion to Supplement the Record (Mar. 7, 2024).

{¶ 8} Washington promptly filed such a motion. The State opposed the motion, arguing that there was no evidence to support defense counsel's unsubstantiated assertions and that the proposed correction was "completely at odds with" co-defense counsel's initial objection to the jury pool. The State noted that neither the prosecutor nor the court responded to that initial objection in a way that suggested that there were, in fact, minorities in the jury pool. In a reply memorandum, Washington asserted that the initial objection was directed to there being "one African American individual and no African American men." Washington further asserted that defense counsel had later objected to the African-American female's removal from the jury pool. Washington provided an affidavit from his co-defense counsel attesting to the composition of the jury

pool and that he had "voiced [his] disagreement" with Juror Number 22's removal.

{¶ 9} In a lengthy decision, the trial court denied Washington's motion to correct the voir dire transcript. The trial court found "absolutely no merit to Defendant's claim," stating that it was "particularly apparent when the entire transcript is viewed rather than isolating one whispered sidebar." The court continued: "It is offensive, and in this Court's opinion, borders on unethical conduct, that Defendant would allege a Batson challenge was made and ignored by the Court, when no such challenge was made."

{¶ 10} Addressing the specific inaudible section of the transcript, the trial court noted that the audio recording was "extremely difficult to hear" as all parties whispered or used low voices and all parties were wearing masks due to the trial taking place at the height of the COVID-19 pandemic. The court found, however:

> [I]t is *clear* that in the portion of the recording where "inaudible" is referenced, only one person is speaking and that person is a female, the Judge. The only male voice(s) heard at that juncture speak *after* the Court said "I think she'd be eliminated either way," where each party then said "ok" and *both* of Defendant's attorneys said "no objection." (Audio at 1:08:06). Thus to imply [Co-Defense] Attorney Nowicki, a male, was speaking at the same time as the Court is completely inaccurate. While not all of the words can be made out for purposes of generating a transcript, the audio does not go silent. The female voice can be heard, just not deciphered. Again, the Court repeatedly listened to the audio and knows its own voice. The transcript is correct in connecting the inaudible

designations to a statement of the Judge.

(Emphasis in original.)

{¶ 11} The trial court further indicated that it was able to hear part of the inaudible portion. It ordered the transcript be revised to read: "And number 22, when asked if there's any * * *, potentially it's a cause issue." After reviewing the questioning of Juror Number 22 regarding family or friends who had been involved in the criminal justice system, the court further found that "to assert that Attorney Nowicki opposed Juror 22 being excused, allegedly for race, is inaccurate as Attorney Nowicki's own questioning of the Juror brought out the potential reasons to excuse her for cause, as possibly being unable to be fair and impartial."

{¶ 12} Additionally, the trial court stated that some jurors were excused for cause due to the COVID-19 pandemic. The court found, after reviewing the questioning of Juror Number 22 and its notes from voir dire, that Juror Number 22 was dismissed for cause based on COVID concerns. It explained: "Everyone was on high alert in November 2020 due to COVID, including the Supreme Court of Ohio who was advising to hold hearings remotely if possible. Multiple jurors were excused for COVID, including Juror No. 22. The Court was very careful in explaining all of the precautions taken regarding COVID and the processes in place. . . "

{¶ 13} Finally, the trial court found that there was "no evidence to support [Washington's] argument that there was any objection to dismissal of the only African American juror. Instead the transcript contradicts such a claim." The court cited co-defense counsel's objection at the beginning of voir dire to there being "no people of

minority in the jury pool," which included Juror Number 22. It also referenced defense counsels' later agreement to the dismissal of Juror Number 22. The court stated, "There was no other discussion about Juror No. 22 nor was any objection raised despite what is asserted by Attorney Nowicki's Affidavit."

{¶ 14} The trial court denied Washington's motion to supplement the transcript but ordered certain lines on pages 54 and 55 of the amended voir dire transcript to be corrected. The court attached copies of its notes from voir dire (Court's Exhibit I) to its decision. A second amended voir dire transcript was filed on May 17, 2024.

{¶ 15} Washington now raises two assignments of error. We will address them in reverse order.

## II. Correction of the Record

{¶ 16} Washington's second assignment of error asserts that the trial court erred in not amending the record to state that Juror Number 22 was an African-American individual.

{¶ 17} As an initial matter, we question whether we have authority to review on appeal the trial court's factual determinations upon ruling on Washington's App.R. 9(E) motion to correct/supplement the transcript. App.R. 9(E) provides that "[i]f any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to *and settled by the trial court* and the record made to conform to the truth." (Emphasis added.)

{¶ 18} Even assuming that we have authority to review the trial court's denial of Washington's motion, we would find no error in this case. On appeal, Washington relies

on the affidavit of his co-defense counsel, which was attached to the reply brief in support of his motion to correct the record. The affidavit stated, in part:

6. Once the Jury Pool entered the Courtroom, a side bar occurred wherein counsel objected to the composition of the jury pool, and that the pool was not an appropriate cross section of the citizens of Miami County.

7. There were no African American males in the jury pool. There was one African American female, Juror #22.

8. After the Court and the attorneys conducted their Voir Dire of the potential jurors, a side bar occurred to make challenges for cause and preemptory challenges.

9. During the Challenge for Cause stage, Juror #22 was challenged for cause. Juror #22 was the African American female.

10. I voiced my disagreement with her being removed from the jury but the Court stated that she considered it to be a possible cause issue and she would be eliminated either way.

11. The Court permitted the removal of the juror in question. At that point in time, the entire jury was comprised of Caucasian men and women.

{¶ 19} Despite the affidavit, we find no error in the trial court's denial of Washington's request to correct the record as he proposed. Page 3 of the amended voir dire transcript reflects that co-defense counsel objected to the composition of the jury pool on the ground that "there are *no* people of minority in the jury pool" and "it doesn't represent [a] proper cross-section of Miami County." (Emphasis added.) Co-defense

counsel did not assert in his affidavit that the transcript misrepresented what he had said, nor did Washington seek to correct this portion of the transcript. In response to this initial objection, the prosecutor pointed out that she believed the jury pool had been randomly selected. The trial court also commented that the jury commissioner uses a software system to randomly select the jury pool and there is no input from any party. No one contradicted co-defense counsel's representation that there were "no people of minority."

{¶ 20} While co-defense counsel asserted in his affidavit that there was, in fact, an African-American female in the jury pool, the trial court clearly found that the affidavit lacked credibility. Not only did co-defense counsel's initial objection belie the presence of African-Americans in the jury pool, but the trial court found no support for his sworn statement that he had objected to Juror Number 22's removal from the jury pool due to her race. The amended voir dire transcript and the court's records demonstrated that Juror Number 22's response to some voir dire questions raised concerns about whether she could be fair and impartial and, regardless, she was removed due to COVID concerns without objection. On this record, we have no basis to override the trial court's factual determinations regarding what occurred at trial.

{¶ 21} Washington's second assignment of error is overruled.

### III. Dismissal of Juror No. 22

{¶ 22} Washington's first assignment of error claims that the trial court abused its discretion in dismissing the only African-American prospective juror for cause. However, the record does not substantiate that *any* African-American citizen was dismissed from the jury pool. Even assuming, for sake of argument, that Juror Number 22 was an

African-American individual, the record demonstrates that she was removed for cause due to COVID-19 concerns without objection.

**{¶ 23}** Washington's first assignment of error is overruled.

### IV. Conclusion

**{¶ 24}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and HUFFMAN, J., concur.